## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Carl Staley, being duly sworn, state:

### INTRODUCTION

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) for location information pertaining to the device assigned cellular telephone number 802-417-4276 (the "TARGET PHONE"). The service provider for the TARGET PHONE is Cellco Partnership, d/b/a Verizon Wireless ("Verizon") with offices located in Bedminster, New Jersey. As a provider of wireless communications services, Verizon is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

2.      The information to be searched is described in the following paragraphs and in Attachment A. The information and records to be disclosed by Verizon to the government are further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3.      I am a Supervisory Deputy United States Marshal with the United States Marshals Service ("USMS") and have been employed with the USMS since February of 2010. I have participated in investigations of fugitives and, among other things, have conducted or participated in surveillance, the execution of arrest and search warrants, and debriefings of informants. Through my training, education, and experience, I have become familiar with the manner in which fugitives or targets of criminal investigations utilize resources, including cellular telephones and social media platforms, to communicate while avoiding detection by law enforcement.

4.      The facts in this affidavit come from my personal observations, my training and experience and information obtained from other law enforcement investigators and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Where I describe a statement, it is described in substance, not verbatim.

5.      Based on the facts set forth in this affidavit, there is probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting Lobdell, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4) for a violation of her pretrial conditions, set pursuant to 18 U.S.C. §3583.

6.      The Court has jurisdiction to issue the proposed warrant because the information sought "is in . . . a district in which the provider . . . is located or in which the wire or electronic communications, records, or other information are stored." 18 U.S.C. § 2711(3)(A)(ii).  Further, to the extent the requested warrant authorizes a search of a device within the purview of Federal Rule of Criminal Procedure 41, this Court has venue because—as described below—there is reasonable cause to believe the device is located within the District of Vermont.

## PROBABLE CAUSE

7.      On or about March 22, 2024, an arrest warrant was issued in connection with alleged violations of pretrial release by Ashley LOBDELL.  According to information from the Probation Office in connection with the alleged violation of release conditions, LOBDELL was discharged from Jenna's Promise without completing the program on March 21, 2024.  At the time the warrant was issued, LOBDELL was released on conditions pending sentencing for a violation of 18 U.S.C. § 1951(a) for commission of a Hobbs Act Robbery that occurred in Rutland, Vermont. To date, LOBDELL has not been arrested.  While released on conditions, LOBDELL had been assigned a U.S. Probation Officer, with whom LOBDELL had been directed to remain in contact.

LOBDELL continued to communicate sporadically with the Probation Officer, but has failed to report as directed.

8.      On April 5, 2024, LOBDELL's assigned Probation Officer provided me with the TARGET PHONE as the phone number through which the Probation Officer had communicated with LOBDELL. The Probation Officer informed me the last communication with LOBDELL was on April 3, 2024. Based on LOBDELL's communications with the Probation Officer, the Probation Officer believed LOBDELL to be in the area in and around Rutland County, Vermont.

9.      LOBDELL has substantial ties to the Rutland County area. Multiple members of LOBDELL's close family reside in Rutland County, including her father.

10.      As described above, there is reason to believe that the TARGET PHONE is currently located within the District of Vermont. LOBDELL is believed to be in the Rutland area, and recently used the TARGET PHONE to communicate with her Probation Officer.

**Information Regarding Cellular Service Providers**

11.      In my training and experience, I have learned that Verizon is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device

does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

12.     Based on my training and experience, I know that these records related to historical cell-site data can provide data related to the user of a target cellphone that reveals the patterns of their daily life. Because most cellphone users take their phones with them as they travel from location to location, the cell-site data created through their daily use of the cellphone will reveal patterns of activity that allow law enforcement to predict a particular cellphone user's likely future path of travel. In my training and experience, I have learned historical cell-site data are often valuable to determine places the TARGET PHONE has remained stationary for long periods of time with little activity, such as times and places the users may have stayed overnight or places the user may spend time during the day. In addition, historical cell-site data can help to determine patterns of movement such as routes of travel and times of travel. These "pattern of life" data can be very helpful to law enforcement when attempting to apprehend a person to be arrested.

13.     Based on my training and experience, I know that Verizon collects cell-site data for phones to which it provides service as part of the records it maintains in its usual course of business. Further, I know that Verizon can collect cell-site data on a prospective basis about the TARGET PHONE.   Based on my training and experience, I also know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Verizon typically collect and retain

cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

14.     Based on my training and experience, I also know that Verizon also can collect per-call measurement data, also called the "real-time tool" or "RTT." RTT data estimate the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location that is more precise than typical cell-site data.

15.     Also based on my training and experience, I know that providers of cellular telephone service such as Verizon generally have technical capabilities that allow them to collect and generate information about the specific locations of the cellular telephones to which they provide service, including E-911 Phase II data such as GPS locations or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

16.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers—as transmitted from a cellular device to a cellular antenna or tower—can be recorded

by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

17.     In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications.  When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

## AUTHORIZATION REQUEST

18.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41. I further request that the Court direct Verizon to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

19.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure

of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2)

20.     I also request that the Court direct Verizon to furnish the government with all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon's services, including by initiating a signal to determine the location of the TARGET PHONE on Verizon's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

21.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

22.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the TARGET PHONE outside of daytime hours.

23.     Because the warrant will be served on Verizon, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

CARL STALEY
Deputy United States Marshal

Subscribed and sworn before me
this 5ᵗʰ day of April, 2024

HON. KEVIN J. DOYLE
UNITED STATES MAGISTRATE JUDGE